HENRY R. SMITH AND OTHERS vs. THE TOWN OF NEW HAVEN.

New Haven & Fairfield Cos., April T., 1890. CARPENTER, LOOMIS, SEYMOUR, TORRANCE and F. B. HALL, Js.

The statute (Gen. Statutes, § 2713,) provides that all applications to the Superior Court for the laying out of a highway " shall be heard and decided by a committee of three disinterested persons to be appointed by the court." Held that where the court appointed three persons as a committee upon such application, and one of them before the committee had finished its proceedings removed permanently from the state, the remaining members did not stand, in respect of capacity to act, as they would have done if only two had been appointed by the court.

They might act when the absence of the third member had been waived by the parties in interest.

They might also act in the absence of the third member, if he had been notified to be present.

Or, regarding the removal of the third member as creating a vacancy in the committee, the vacancy could have been filled by the court upon the application of either of the parties.

In the absence of any application to the court, or request to the committee, that such vacancy should be filled, where known to exist, the two members had power to proceed as a committee and complete their work as such.

Where the defendant town had full knowledge that the third member had removed permanently from the state, and instead of moving in court to have the vacancy filled, moved that a report which had been made by the full committee should be recommitted for a further finding, it was held to be a waiver of all objection to the two members acting, although the defendant appeared before them at the later hearing and objected to the two proceeding without the absent member.

Gen. Statutes, § 3481, provides that when a new highway shall be constructed across a railroad, "such highway shall pass over or under the railroad, as the railroad commissioners shall direct." Held that the commissioners could direct whether the highway should pass over or under the railroad before the laying out of the highway had been completed by the acceptance of the committee's report.

The language—" when a new highway shall be constructed," does not refer to the laying out of the highway, but to the building of the crossing over or under the railroad.

Section 3482 provides that "in cases pending June 1st, 1887, the railroad commissioners may determine the length, width and material of such bridge at any stage of the proceedings." Held that by " cases pend-

Smith *v.* Town of New Haven.

ing " is meant cases pending before the court and not before the rail-
road commissioners, and by " proceedings " the proceedings in such
cases.

[Argued April 22d—decided July 10th, 1890.]

APPLICATION for the laying out of a highway; brought
to the Superior Court in New Haven County, and appealed
by the defendant town from a judgment of the court
(*Fenn, J.,*) overruling a remonstrance to the report of a
committee, accepting the report and rendering judgment
for the plaintiffs. The case is fully stated in the opinion.

*C. R. Ingersoll,* for the appellant.

1. The railroad commissioners had no power July 13th,
1888, to direct the highway prayed for to be carried over
the railroad, and to determine the length, width and mate-
rial of the bridge so directed. Gen. Statutes, §§ 3481, 3482;
*N. York & N. England R. R. Co.* v. *City of Waterbury,* 55
Conn., 19; *Pillsbury* v. *Town of Springfield,* 16 N. Hamp.,
565.

2. By the removal of the committee-man, Thomas, from
the state of Connecticut to Texas, a vacancy in the com-
mittee was created, and the two remaining members were
incompetent to decide the questions committed to them at
the March session, 1889, so long as the vacancy existed.
The statute requires a committee of " three disinterested
persons." Gen. Statutes, § 2713. " Where several persons
are appointed, it would seem to be for the very purpose of
giving the district the benefit of the combined judgment
and good sense of all." *Wilson* v. *Waltersville School Dis-
trict,* 46 Conn., 400. And the three persons composing the
committee must be inhabitants of the state. *Town of Union*
v. *Crawford,* 19 Conn., 331. Thomas's removal therefore
*ipso facto* created a vacancy in the committee. *Town of
Union* v. *Crawford, supra; Barre* v. *Greenwich,* 1 Pick.,
129; *Giles* v. *School District,* 31 N. Hamp., 304; *State* v.
*Jones,* 19 Ind., 356; notes to last case, 81 Am. Dec., 403.
This fact of removal operated as a resignation or surrender
of the office. *Magie* v. *Stoddard,* 25 Conn., 565. See also

*English* v. *Smith*, 13 Conn., 221; *People* v. *Nostrand*, 46 N. York, 375; *Howlett* v. *Mayor &c. of Syracuse*, 63 id., 291.

3. There has been no waiver by the defendant of its statutory right to a hearing and decision " by three disinterested persons." No question of waiver properly arises upon the record. The demurrer states certain grounds of demurrer, but no facts appear in the record to justify the statement. Besides, the infirmity could not be waived. It was jurisdictional, not personal. *English* v. *Smith*, 13 Conn., 221; *Hawley* v. *Baldwin*, 19 id., 584; *Nichols* v. *Bridgeport*, 23 id., 189; *Avery* v. *Groton*, 36 id., 304. The statement in *Betts* v. *New Hartford*, 25 Conn., 186, that the incompetency of one of the board of county commissioners did not affect the powers of the other two, was *obiter*, but justified by the then statute.

4. Assuming Thomas to be a rightful member of the committee, the third ground of remonstrance shows " irregular and improper conduct " of the committee which ought to vitiate their report. The remonstrance charges that Thomas has made a report, and that the other two have appended it to their report, in which it is assumed that he has acted as one of the committee, when the fact is that " Thomas has taken no part whatever in any hearing of the subject upon which he assumes to make report, and has not been within the state of Connecticut during the period covered by any such hearing, and has simply signed said paper at the request of the plaintiffs, by whom the same was prepared and sent to him for the purpose." The demurrer admits all this. If Thomas is to be regarded as one of the committee his report must be taken with the report of the others as the committee's report, and indisputably such report has been most irregularly and improperly prepared and rendered to the court.

*C. H. Fowler* and *H. D. Russell*, for the appellees.

F. B. HALL, J. This is an application to the Superior Court under section 2713 of the General Statutes, for the

lay-out or extension of a certain street in New Haven across the track of the Shore Line Railroad.

The action was commenced in 1883. A statement of some of the proceedings since that time seems necessary to a consideration of the questions raised by the appeal to this court.

The record discloses that the committee of three persons, appointed in 1886, whose duty it was to decide the questions involved in the application, made its first report to the Superior Court in May, 1887, after the parties in interest had been fully heard before all the members of the committee.

By this report the committee found that common convenience and necessity required the crossing asked for, and made a lay-out and survey of the same and an estimate of damages and benefits.

The defendant remonstrated against the acceptance of this report, upon the sole ground that it failed to show with sufficient definiteness the lay-out and survey made by the committee, and the report was recommitted for a more particular description of the highway, showing lines and measurements.

On May 24th, 1887, the same committee, its three members participating, made a supplemental report, containing a more definite description of the extended highway, but failed to lay out and survey a part of the highway asked for by the application, for the reason, as stated in the report, that the plaintiffs and defendant had agreed that that portion had been previously laid out and defined.

The defendant again remonstrated, upon the ground that the town of New Haven had made no such concession, and that the lay-out was irregular in not including the other portion of the highway asked for by the plaintiffs, and the Superior Court again recommitted the cause to the same committee.

On the 19th of October, 1887, the committee, all its members having been present at the hearing and having joined in the report, made an additional report, in which they found that common convenience and necessity required the

crossing asked for, laid out and defined the same, and estimated damages and benefits.

Against the acceptance of this additional report the defendant remonstrated, by a remonstrance filed October 31st, 1887, and by an amendment thereto filed in April, 1889, the principal grounds of which were that the report failed to show whether the highway laid out was to pass over or under the Shore Line Railroad; and that the committee had found the proposed highway to be of common convenience and necessity, and had assessed damages and benefits before ascertaining whether the proposed crossing was to pass over or under the railroad and before ascertaining what the expense of its construction would be.

Upon a hearing in the Superior Court upon this remonstrance in April, 1889, the court having found that after the filing of the report of October 19th, 1887, the railroad commissioners had, in July, 1888, directed the crossing in question to be carried over the railroad, and that they had determined the dimensions and material of the bridge to be constructed, recommitted the cause to the same committee for a further hearing and a final assessment of damages, and also to report whether, notwithstanding such action of the railroad commissioners, common convenience and necessity demanded the highway, which had then been laid out and surveyed by the committee. At the time of the hearing upon this remonstrance, in April, 1889, Aretas W. Thomas, one of the committee, had left this state, having on the 20th of October, 1887, removed his residence to the state of Texas. This fact was known to the defendant at this time and at the time of the filing of this amended remonstrance in April, 1889. So far as it appears by the record, the defendant made no objection to a recommittal of the report to the same committee, and no request for the filling of the vacancy which it is now claimed then existed. After the recommittal of this report two members of the committee, on June 11th, 1889, made their report to the Superior Court, signed by the two members only. Thomas was not present and did not participate in the action of these

two members of the committee. Reasonable notice was
sent him to be present at the meeting of the committee, and
he has filed in the Superior Court a separate report, signed
by himself only, in which he finds the extension of the
highway to be required by common convenience and neces-
sity, notwithstanding the direction of the railroad commis-
sioners. By the report of June 11th, 1889, signed by the
two members of the committee, the committee refer to the
reports before made by them, and find that at the hearing be-
fore the full committee, prior to the report of October 19th,
1887, the committee "agreed and concluded" that the
highway in question must of necessity be carried over the
railroad by a bridge, and that they, at that time, decided, in
view of that fact, that common convenience and necessity
required the lay-out as then reported by them, but that
their conclusion with reference to bridging the railroad was
not stated in their report; they then find that common con-
venience and necessity require the lay-out of the highway
"as described in our report filed October 19th, 1887," and
make another and different estimate of damages and benefits.
It is only in respect to the question of damages and benefits
that this report differs from that of October 19th, 1887.
The committee find by this report that the defendant ap-
peared before them and objected to any action being taken
by the committee unless all the members were present, and
that this objection was overruled by the committee.

To the acceptance of this fourth report of the committee
the defendant remonstrated, upon the ground that only two
members of the committee appointed by the court partici-
pated in the proceedings not covered by previous reports;
that the removal of Thomas to the state of Texas having
incapacitated him to discharge the duties of the office of a
member of the committee, the committee under its original
appointment was without power to act further; that Thomas's
separate report was made without his having taken any part
in the last hearing; and upon the further ground that the
railroad commissioners had no jurisdiction to make the or-
der of July, 1888, no highway having at that time been laid

out or ordered to be laid out. No motion was made by the defendant for a re-estimate of damages and benefits. To this remonstrance the plaintiffs demurred. The Superior Court sustained the demurrer, and accepted the report, and by accepting this report accepted the former reports of the committee, so far as they were adopted by the last report.

The statutes affecting the question made concerning the powers of the railroad commissioners are section 3481 of the General Statutes, passed in 1883, which provides that "when a new highway, or a new portion of a highway, shall hereafter be constructed across a railroad, such highway or portion of highway shall pass over or under the railroad, as the railroad commissioners shall direct;" and section 3482, which provides that "when a highway or portion of a highway has been or shall be laid out or ordered to be laid out across a railroad, and the railroad commissioners shall direct such highway to be carried over the railroad, they shall determine the length, width, and material of the bridge over the railroad before the damages that may be occasioned to any person by the taking of land for such highway are finally assessed; * * * but in cases pending June 1st, 1887, said commissioners may determine the length, width and material of such bridge at any stage of the proceedings."

The claim of the defendant is that the railroad commissioners could not direct whether the highway should pass over or under the railroad until the highway had been legally laid out by an acceptance of the committee's report.

This claim does not seem to accord with that made by the defendant, and sustained by the court, in the remonstrance of October 31st, 1887, where the defendant seems to object to the acceptance of the committee's report upon the ground that the committee had decided the questions submitted to them before having ascertained whether the highway was to pass over or under the railroad. The committee had no power to finally determine that question, and no means of obtaining the desired information except through the railroad commissioners.

But we think the defendant's claim is not sustained by

the language of the statute. Section 3481 is silent as to the
time, with reference to the lay-out, when the direction of the
railroad commissioners shall be given. The language —
" when a new highway shall hereafter be constructed," does
not refer to the lay-out of the highway but to the building
of the crossing over or under the railroad. Such was the
decision of this court in the case of *New York & New Eng-
land Railroad Co.* v. *City of Waterbury*, 55 Conn., 19. In
that case it was claimed that the right to cross the railroad
at grade was not affected by the act of 1883, because the
highway was laid out before the passage of the act. The
effect of the decision of this court was that the language of
the act had no reference to the legal lay-out of the highway
but to the actual construction of the crossing. We find
nothing in the language of the act requiring the lay-out of
the highway to be fully completed, and the report of the
committee accepted, before the railroad commissioners may
direct whether the crossing shall be made over or under the
railroad. In the present case it appears that the committee
assumed that the crossing must of necessity be made over
the railroad. We think that before making its report to the
Superior Court, the committee appointed upon an application
of this character ought to be able to ascertain whether the
contemplated crossing would be made over or under the
railroad, and that under section 3481 it is competent for the
railroad commissioners to give that necessary information and
direction before the committee makes its report.

It seems to us further that the language of section 3482
is opposed to the defendant's claim. That section provides
that in cases pending June 1st, 1887, the commissioners may
determine the length, width and materials of the bridge "at
any stage of the proceedings." The defendant contends that
the words " at any stage of the proceedings " refer to the
proceedings before the commissioners, and that by the term
" cases pending " is meant cases pending before the com-
missioners. We see no reason for putting such a construc-
tion upon this language. The proceedings before described
in this section are the laying out of a highway and the as-

sessment of damages. We think the words in question were used with reference to those proceedings, and not to proceedings before the commissioners, and that the expression " cases pending " is broad enough to include, and was intended to include, proceedings for the lay-out of highways across railroads, commenced prior to June 1st, 1887, but in which the crossing had not, at that date, been constructed. The present application, which was pending on that date, is included in that class.

The next inquiry is, was there any irregularity or improper conduct on the part of the committee in proceeding with their last hearing with but two members of the committee present ?

The argument of the defendant is that, because the statute (Gen. Statutes, § 2713), provides that such application shall be heard and decided by three disinterested persons appointed by the court, by reason of the vacancy created by the permanent removal of Thomas from the state, the remaining two members became incompetent to decide the questions committed to them. It is not denied that the committee were public agents, nor that under certain circumstances a majority of such public agents may lawfully act in the absence of the remaining members. This principle is well settled in Connecticut. *Patterson* v. *Leavitt,* 4 Conn., 50 ; *Town of Middletown* v. *Town of Berlin,* 18 id., 189 ; *Towns of Groton and Ledyard* v. *Hurlburt,* 22 id., 177 ; *Gallup* v. *Tracy,* 25 id., 10 ; *Martin* v. *Lemon,* 26 id., 190. And several later cases affirming this doctrine might be cited.

But it is claimed that this principle does not aid the plaintiff and that the case is the same as if the Superior Court had appointed but two persons upon the committee. We think this case is not identical with one in which there had been a failure of the court to appoint the third member of the committee. The statute is absolute in its requirement that three persons shall be appointed, but the law does not in all cases require the action or presence of these three

members to enable the committee to lawfully act after such appointment.

The committee may act by a majority, all being present ; they may so act in the absence of a minority of their number who have been duly notified to be present; and we see no reason why they may not so act when the absence of the minority has been waived by the parties in interest.

Assuming for the purpose of this case that the defendant's position is correct, that the permanent removal of Thomas from the state created a vacancy on the committee, and that this vacancy might have been filled by the Superior Court upon a reasonable application for the appointment of another person, we think the right to make such an application was one which could have been waived by the parties; that while there remained a majority of the committee qualified to act, the committee continued its existence; and that in the absence of any application or request to the court or to the committee for the appointment of another person, it possessed the power to proceed by its two members and complete the work which it seems had been so nearly performed before the removal of Thomas from the state.

Was it irregular or improper for the committee to proceed with the final hearing after the objection which was made by the defendant?

As we interpret the record the defendant did not claim before the committee that there was any vacancy to be filled by an appointment by the court before the hearing should proceed. The report shows that Mr. Thomas had failed to appear at the meeting after reasonable notice had been given him, and that the defendant appeared at the time fixed for the meeting and objected to "any action being taken by the committee unless all the members were present." This language seems to assume that Thomas was then a member of the committee, and the committee must have understood that the defendant desired the presence of Thomas, who, the defendant now claims, was not then a member of the committee. Had the committee by its ac-

tion deprived the defendant of an opportunity to procure the appointment of a person to fill the vacancy, the claim that their action was irregular and improper would have greater force. But the defendant seems to have had ample opportunity to procure this vacancy to be filled, had it desired another person to be appointed. We are informed by the record before us that the defendant had knowledge of the disqualification of Thomas as early as February, 1889, and yet when the Superior Court in April of that year, upon the defendant's remonstrance, recommitted to the same committee the report of October 19th, 1887, no objection appears to have been made by the defendant, nor any request for the filling of this vacancy.

Assuming, as we think we fairly may from the record, that no objection was made to the committee upon the ground that there was a vacancy created by the removal of Thomas from the state, and that the parties having knowledge of the existence of the vacancy did not care to have it filled, we find no irregularity or improper conduct on the part of the committee in having by its two members proceeded with the hearing after the defendant's objection.

There is no error in the judgment of the Superior Court sustaining the demurrer to the remonstrance and accepting the report. ·

In this opinion the other judges concurred.