## JUDSON v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 15, 1903.)

### No. 31.

1. UNITED STATES—CONDEMNATION PROCEEDINGS—POWER OF DISTRICT ATTORNEY TO AGREE TO ARBITRATION.

A district attorney of the United States, authorized to institute and conduct proceedings to condemn land for a public building within a state, has the same power to bind the United States by an agreement to submit the matter of damages to arbitration, in accordance with a provision of the state statute applicable to such actions, as the attorney for an individual litigant would have.

2. SAME—AGREEMENT FOR ARBITRATION—CONCLUSIVENESS OF JUDGMENT ON AWARD.

Gen. St. Conn. 1902, § 958, provides that "when the parties to any action pending in court desire to refer it to arbitration each may choose one arbitrator and the court may appoint a third; and the award of such arbitrators returned to and accepted by the court shall be final and judgment shall be rendered pursuant thereto." In an action brought by the United States in that state to condemn land for a public building, in which in accordance with the state procedure it was the duty of the court, on application of the government, to appoint a committee to assess the damages, the District Attorney and the attorney for the landowner entered into a stipulation to submit all claims "to the arbitrament and determination" of three persons named, and that the "decision and award of a majority of said arbitrators" should be final when approved by the court. Such an award was made and submitted to the court by

the District Attorney, approved without objection, and judgment entered thereon. *Held*, that the stipulation was one for arbitration, and not for the appointment of a committee under the condemnation statute, and that the judgment entered upon the award was conclusive on the United States.

3. ARBITRATION—WAIVER OF IRREGULARITY.

Under the law of Connecticut as established by decision, where a pending cause is submitted to arbitration under the statute, which provides that each party may appoint an arbitrator, "and the court may appoint a third," the fact that all three arbitrators are selected by the parties does not invalidate their award, when the parties proceed to judgment thereon without objection.

4. SAME—ACCEPTANCE BY COURT—GROUNDS FOR SETTING ASIDE.

The provision of Gen. St. Conn. 1902, § 958, that an award by arbitrators shall be final "when accepted by the court," by implication gives the court power to reject an award; but such power is not arbitrary, and a court is not justified in rejecting an award, or in setting aside a judgment entered thereon, when no irregular or improper conduct on the part of the arbitrators is shown.

In Error to the District Court of the United States for the District of Connecticut.

This cause comes here upon writ of error to review a judgment accepting and confirming the report of Messrs. Tweedy, Mervin, and Bristol, a committee appointed to ascertain the value of land of respondent, and adjudging that the petitioner, the United States, pay into court for the use of said respondent, Judson, the sum of $15,525 as the full value of the property and just damages for the taking thereof, and that upon such payment the land should become the property of the United States. The owner of the land is plaintiff in error. The facts are set forth in the opinion.

Styles Judson, Jr., and R. E. De Forest, for plaintiff in error.

George P. Carroll and F. H. Parker, U. S. Atty.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. In September, 1897, the Treasury Department requested the Attorney General to give such instructions to the United States Attorney for the District of Connecticut as might be necessary to have proceedings in condemnation instituted against certain real estate in the city of Bridgeport owned by Judson, in order that the United States might acquire title thereto, for an addition to the post office in that city, authorized by act of July 19, 1897. The Attorney General forwarded a copy to the District Attorney, with instructions to "institute proceedings on behalf of the United States for the condemnation of the land referred to."

The statutes of Connecticut give the consent of the state to the acquisition by the United States by purchase, condemnation, or otherwise for custom houses, post offices, etc. There is no suggestion that the methods by which the United States shall seek to condemn land are to be in any wise different from those to be pursued by the state, or by some of its political divisions. The method prescribed for the state, for counties, towns, and school districts, is by the appointment of a committee. Application is to be made to the appropriate court or judge, the owner being brought into court by summons or other civil process. Said court or judge, after due notice of said application, shall appoint a committee of three disinterested men, who,

after being sworn and having given reasonable notice to the parties interested, shall view the land, hear the evidence, ascertain the value, assess just damages to the owner or owners, and report their doings to said court or judge, who may accept the same, or may, in case of any irregular or improper conduct on the part of said committee in the performance of their duty, reject it; and in case of rejection said court or judge shall appoint another committee, who shall proceed in the same manner as the first one. The acceptance of the report of such committee shall operate as a judgment in favor of any person to whom damage is assessed. The land shall not be inclosed or used by the state until the amount is paid, and upon payment or deposit shall become the property of the state. Gen. St. Conn. 1902, tit. 31, "Eminent Domain," §§ 4102–4121.

The District Attorney undertook to have the land condemned by such a proceeding. A petition to appoint a committee who should view the land, ascertain its value, assess just damages, etc., as provided in the statute, was prepared October 18, 1897, and within a few days was served on Judson, and on some others whose lands were at first included, but as to whom discontinuance has since been entered. Petition was accompanied by a summons directing respondent to appear before the District Judge on the first Tuesday of December, 1897.

What happened on the return day does not appear. The record discloses no action for nearly six months. On May 28, 1898, which, as the bill of exceptions says, was "the day assigned for the appointment of the committee as prayed for," the District Attorney and the attorney for Judson appeared, and informed the court that the case would furnish no business at that time, as the parties would probably reach an agreement as to a committee. At that time they had agreed together as to the appointment of Messrs. Robertson and Marsh. Subsequently they executed the following instrument, entitled in the United States District Court, with the name of the pending action, "Lyman Gage, Treasurer, v. R. M. Judson." The title of the action was subsequently changed to "United States v. R. M. Judson":

"Know all men that we, Charles W. Comstock, United States Attorney for the district of Connecticut, and Robert E. De Forest, of Bridgeport, attorney for the said R. M. Judson, do hereby promise and agree, to and with each other, to submit, and do hereby submit, all questions and claims between the said United States and the said R. M. Judson, in the action above mentioned and pending in said court, to the arbitrament and determination of Alex. C. Robertson, of Montville, Connecticut, Charles B. Marsh, of Bridgeport, Connecticut, and Frederick A. Bartlett, of Bridgeport, Connecticut, and a decision and award of a majority of said arbitrators shall be final and conclusive upon the approval of the award so made by the court.

"The hearings to be in Bridgeport.

"In witness whereof we have hereunto set our hands and seals this 8th day of June, A. D. 1898.        Charles W. Comstock. [L. S.]
       "Robert E. De Forest.    [L. S.]"

The arbitrators viewed the property, heard evidence, ascertained the value, and assessed damages, the District Attorney taking part in all proceedings before them. On August 8th they signed an award of $32,000 to Judson for his land and damages, and on August 10th the District Attorney and the attorney for Judson filed this award and the agreement to arbitrate in the United States District Court. On

October 5th the District Attorney appeared in court, stated that the government was satisfied with the award, and moved that it be accepted. Thereupon the District Judge made certain entries in his private minute book. These need not be set forth; they will be found in our former opinion, where their effect was discussed. Judson v. Gage, 39 C. C. A. 156, 98 Fed. 540. Suffice it to say that this court has held that they 'did not amount to a judgment. At the next term, however, on January 3, 1899, the court, upon the motion of the District Attorney, ordered and adjudged that the award be approved, judgment rendered thereon, and the land become the property of the United States upon payment of said award. Subsequently, at the same term of court, on February 6, 1899, the District Attorney moved that this judgment be reopened, the award, set aside, and the condemnation proceedings instituted against Judson by the original petition in the case "gone forward with in the manner authorized by law." After hearing and consideration, the District Judge, on May 23, 1899, made an order vacating the judgment and the award. The grounds of such action will be rehearsed infra. Thereafter, on June 12, 1899, the court ordered that a hearing on the appointment of a committee be had on July 17, 1899. The matter was adjourned from time to time, awaiting the decision of the former appeal (39 C. C. A. 156, 98 Fed. 540), as to the effect of the entries of October, 1898; and on February 5, 1900, the court appointed Messrs. Bristol, Tweedy, and Merwin a committee to proceed in conformity with the statutes of Connecticut heretofore cited.

The committee thus appointed gave notice, viewed the land, heard evidence, ascertained the value to be $15,525, assessed to Judson the said sum of $15,525 as his damages, and on January 25, 1901, reported their doings to the District Judge. Remonstrance against the acceptance of the report was filed by Judson's attorneys, and an answer thereto by the District Attorney, all in conformity to Connecticut practice; and on January 7, 1902, after due consideration, the report of the committee was accepted and confirmed, and judgment entered directing the payment of $15,525 by the United States, and that upon such payment the land should become the property of the United States. This writ of error was sued out to review such judgment.

These facts have been abstracted from the record with considerable difficulty, by reason of the clumsy manner in which it has been put together. It contains many papers which have nothing whatever to do with the matters sought to be reviewed by the writ of error. It seems as if all the papers which were to be found on file in the clerk's office, entitled in this cause, had been hastily gathered together without any regard to their logical sequence, and certified to this court, without the slightest effort to eliminate those which have nothing to do with this appeal.

The remonstrance against the acceptance of the report contains many averments of "irregular and improper conduct" on the part of the committee in excluding testimony offered on behalf of Judson. Of these, certainly one is most serious, and might, if it were analyzed, be sufficient ground for reversal; but such a reversal would leave the fundamental question undisposed of. The important point to be de-

cided is whether the court had authority to vacate the judgment of January 3, 1899, approving the award and decreeing accordingly. Of course, if he had no such authority, that judgment stands, it terminated the cause in the District Court, the subsequent proceedings were all irregular and unauthorized, and the judgment appealed from should be itself vacated.

When application was made to vacate the first judgment there was nothing before the court to show any irregular or improper conduct in the performance of their duty on the part of the persons who made the original award; there was nothing to show that their award was so high that the court should have refused to accept it; and the District Judge in the order vacating both judgment and award expressly states the grounds therefor as follows: "Inasmuch as the court was never called upon to appoint any committee to ascertain damages for the taking of the land in question, and inasmuch as the arbitrators herein acted without any authority from or appointment by the court." These grounds are more fully set forth in the following excerpts from the opinion:

"No order of appointment of a committee was ever made by the court, the court never having known the names of the persons acting as committee [prior to the presentation of their report]. The position of respondent is that the judge of a court may delegate to counsel the appointment of a committee; that thereupon they may agree upon such committee, and such committee may act without the names of the persons agreed upon having been approved by the court. * * * [After citing several Connecticut cases, the opinion proceeds:] * * * In all these cases it was held that the party had waived objection by not taking it until after the conclusion of the trial and decision against him. In all of these cases the party had a right to waive the objections. In all, except the criminal case, the party might have submitted his claims to a tribunal, or agreed upon the question at issue without the aid of the court. The District Attorney had no such right. He could not legally agree upon any sum to be paid for the land; he could not agree to submit the case to arbitration; he could not bind the United States by an agreement upon a committee; the United States cannot be estopped by his act in such a matter. While a committee nominated or assented to by a District Attorney might have been appointed by the court upon motion, it would have been the duty of the court to satisfy itself that the committee was a proper one before appointing it. It is possible that the court, if informed that certain persons had been agreed upon, might have considered the assent of the District Attorney sufficient evidence of their fitness without further inquiry. It is possible, and perhaps probable, that the court would have made some further inquiry of counsel or otherwise in regard to the qualifications of the committee agreed upon before appointing them. However this may be, the court certainly never did appoint them, unless it be the law that the judge, when informed that counsel would probably agree upon a committee, can then and there appoint such a committee as the counsel may thereafter agree upon."

The contention of respondent's counsel in this court is not that the judge may delegate to counsel the appointment of a committee, but that where a series of acts such as is above rehearsed has taken place, and an award has been accepted, without any remonstrance, and judgment confirming the action of the putative committee has been entered without objection, the party seeking to exercise the right of eminent domain, whether it be a town, or the state of Connecticut, or the United States, is estopped from asking to have that judgment vacated on the ground that individuals agreed upon by the counsel

for both sides·were not actually appointed a committee by order of court before they began to act.

We are satisfied, however, that no attempt was made 'by the respondent's counsel and the District Attorney to usurp the judicial functions, and to choose a "committee," under the statutes first above cited, and concur in the finding of the District· Judge that the three individuals were agreed upon, not as a committee, but as arbitrators. The form of the written agreement for submission, and of the decision filed awarding damages, and, indeed, the very circumstance that counsel undertook themselves' to agree upon a choice of individuals, when the statute expressly provided that the "court or judge shall appoint" them, all most persuasively indicate that a reference to arbitration was what they had in view and carried out.

It will be necessary, therefore, to refer to the statutes of Connecticut which provide for arbitrations. In section 957, Revision 1902, there is provision made for the submission of any controversy to arbitration upon "an agreement.signed and 'sworn to by any parties." It is unnecessary to state the details of this section, because it manifestly deals with a controversy which has not ripened into an action, and because the District Attorney neither by virtue of his office nor by any special designation was authorized to 'bind the United States by submitting such a controversy to arbitration. The next section (958) is as follows:

"Sec. 958. When the parties to any action, pending in court, desire to refer it to arbitration, each may choose one arbitrator. and ,the court may appoint a third; and the award of such arbitrators, returned to, and accepted by, the court, shall be final, and judgment shall be rendered pursua'nt thereto, and execution granted thereon, with costs."

The proceeding to·condemn the property of Judson was an action pending in court, and as such could be referred under this section, precisely as other actions on contract or in tort may, in proper cases, be referred to be tried without a jury. An application for such reference is an incident of the action, to be anticipated by both parties when action is brought. It is an incident which, under universal practice, it is within the province of the respective attorneys to control. No provision of the section requires the seal, or the oath, or the signature of the party (as in section 957) to be presented to the court·before reference is had. The assent to such an arbitration is one which, it is within the attorney's power to give, by virtue of his office as attorney in charge of the party's litigation in such pending action, and, whatever differences there may be between him and his client as to whether. such reference should or should not be agreed to, the other party has the right to rely on the attorney's power to represent his client in the procedure regulated by this section just as much as he has in any steps he may take conformably to the recognized procedure in pending actions. No one advances the proposition here that in the case of a private litigant the assent expressed by his counsel to an arbitration under section 958 could be repudiated by the client after the arbitrators had made their award, and no case cited warrants any such conclusion.

"Condemnation suits in behalf of the United States to acquire lands . for public use are, by the act of Congress of August 1, 1888 [U. S.

Comp. St. 1901, p. 2516], to be conducted, as to matters of practice in the federal court having jurisdiction, in conformity as near as may be to the practice, pleadings, forms, and proceedings existing at the time in like causes in the courts of record of the state within which such federal court is held. It has been decided by the Supreme Court that a proceeding to condemn land for public use is a suit at common law. Kohl v. U. S., 91 U. S. 367, 23 L. Ed. 449. Consequently, irrespective of the terms of the federal condemnation act, conformity of procedure is required, as in all suits at common law, by section 914 of the United States Revised Statutes [U. S. Comp. St. 1901, p. 684]." In re Secretary of the Treasury (C. C.) 45 Fed. 396, 11 L. R. A. 275. In Cooke v. U. S., 91 U. S. 389, 23 L. Ed. 237, it is held that when a government enters the domain of commerce it submits itself to the same laws that govern individuals there. Thus, if it becomes the holder of a bill of exchange, it must use the same "diligence to charge the drawers and indorsers that is required of individuals, and, if it fails in this, its claim upon the parties is lost. United States v. Barker, 12 Wheat. 559, 6 L. Ed. 728. Generally, in respect to all the commercial business of the government, if an officer specially charged with the performance of any duty, and authorized to represent the government in that behalf, neglects that duty, and loss ensues, the government must bear the consequences of his neglect. But this cannot happen until the officer specially charged with the duty, if there be one, has acted or ought to have acted. As the government can only act through its officers, it may select for its work whomsoever it will; but it must have some representative authorized to act in all the emergencies of its commercial transactions. If it fail in this, it fails in the performance of its own duties, and must be charged with the consequences that follow such omissions in the commercial world."

This court held In re Secretary of the Treasury, 12 C. C. A. 235, 64 Fed. 472, that when "the United States institute a suit they * * * stand with reference to the rights of the defendants precisely as private suitors, except that they are exempt from costs and from affirmative relief against them beyond the demand or property in controversy. The Siren, 7 Wall. 152, 19 L. Ed. 129."

So, too, when the federal government undertakes to enter into a litigation with an individual, and to prosecute that litigation in conformity with the procedure of some particular state, it will be bound by the acts of its attorney as other litigants are when prosecuting or defending suits under such procedure. When such procedure recognizes the authority of the attorney, by virtue of his office, to bind his client by admissions made in pleading, by stipulations as to forms of proof, by failure to object to testimony, by consenting to proceed before 11 jurors, by moving for or agreeing to a reference, precisely the same rule must be applied to the United States appearing by its District Attorney. We are therefore clearly of the opinion that the District Attorney had authority to bind the United States by indicating a desire to refer the pending action against Judson to arbitration and by expressing a choice as to the arbitrators.

It may be noted that whereas sections 4103, etc., provide that the court "shall" appoint the committee, the section regulating arbitrations

of pending actions (section 958) provides that each side may choose one arbitrator and the court "may" appoint a third. This language would seem to indicate that if the parties choose to go on before the two arbitrators whom they have chosen they may do so. No Connecticut decision to which we are referred expressly decides that point, but abundant authorities from that state sustain the proposition that when to the knowledge of both sides there has been some irregularity in the initiation of the proceeding, and both sides have nevertheless gone on until final decision, they are mutually estopped from disputing the legality of the tribunal they have selected. This was held in Smith v. Town of New Haven, 59 Conn. 203, 22 Atl. 146, where the statute required a committee of three, whereas a committee of two only had acted. Other authorities are Andrews v. Wheaton, 23 Conn. 112; Crone v. Daniels, 20 Conn. 331; Post v. Williams, 33 Conn. 147; Sherwood v. Stevenson, 25 Conn. 431; White v. Fox, 29 Conn. 570; Kimball v. First Baptist Church, 2 Gray, 517; Newcomb v. Wood, 97 U. S. 581, 24 L. Ed. 1085. All these causes were cited by the District Judge, and distinguished by him, on the theory that the "District Attorney could not agree to submit the case to arbitration"; but on that proposition we have reached a different conclusion.

We have, then, a case where both sides by their competent representatives agreed to refer a pending action to arbitration under section 958, where they each chose an arbitrator, where they each agreed to the one chosen by the other, where they both agreed to a third arbitrator, whom otherwise the court would have appointed, where they proceeded before the three persons thus selected without objection by either, put in their proofs, presented their arguments, and awaited the award without any suggestion that the tribunal of their own selection was incompetent to act. Under the procedure in Connecticut as administered by its courts, such objection came too late. Both sides were estopped when the award came before the court from insisting on the objection that the name of the third arbitrator, who was the choice of both sides, had not been presented to the court for its action before the arbitrators proceeded with the cause. Such is the plain import of the authorities cited, in the case of litigants other than the United States, and, as was pointed out before, this sort of arbitration being an incident of the procedure to condemn land, the same rule must apply to the United States when it is prosecuting a suit in conformity to such procedure.

There is another difference between the statutory provisions for trial by "committee" and trial by "arbitrators." In the former case, when the report is presented to the court or judge, he or it "may accept the same, or may, in the case of any irregular or improper conduct on the part of said committee in the performance of their duty, reject it." This confines the power to reject to cases where the irregular or improper conduct, etc., is shown. In section 958 the language is, "the award * * * returned to and accepted by the court shall be final," etc. The power to accept would seem to carry with it the power to reject, and it was so held in Re Curtis-Castle Arbitration, 64 Conn. 501, 30 Atl. 769, 42 Am. St. Rep. 200. That case held, however, and it seems to be a leading case in Connecticut, that this did not import a

purely arbitrary power to reject; that "the duty imposed on a court in the acceptance of the award of arbitrators is closely similar to the duty in the acceptance of the report of a committee, or of an auditor, or of a referee. The same word is used by the statutes, and the duties imposed must be substantially the same." When the·award of the arbitrators therefore was brought before the District Judge for his acceptance, on January 3, 1899, unaccompanied by any remonstrance showing any irregular or improper conduct in the performance of their duties by the arbitrators, he committed no error in accepting it, and entering judgment pursuant thereto. And, in accordance with the views above expressed, we are satisfied that the District Judge erred when he undertook to vacate such judgment and award solely upon the grounds that "the court was never called upon to appoint any committee," and "the arbitrators acted without any authority from or appointment by the court." The order of vacatur, therefore, entered May 23, 1899, should be vacated and set aside. Inasmuch as the judgment of January 3, 1899, disposed finally of the pending action by adjudging the value of his property and damages to Judson, and his said property to the United States upon payment of the award, the further action of the District Judge in appointing a new committee was without authority, and the subsequent judgment of January 7, 1902, undertaking to accept the subsequent award of such new committee, should be vacated and set aside.

The judgment of January 7, 1902, is reversed, and the cause remanded, with instructions to vacate the order of May 23, 1899.