PAUL J. HANSON ET AL. *v.* COMMISSIONER OF TRANSPORTATION, STATE OF CONNECTICUT

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued October 19, 1978—decision released January 2, 1979

Robert A. Slavitt, with whom were George G. McKendry and, on the brief, A. D. Slavitt, for the appellants (plaintiffs).

Victor Feingold, assistant attorney general, with whom were William McQueeney, assistant attorney general, and, on the brief, Carl R. Ajello, attorney general, for the appellee (defendant).

COTTER, C. J. On June 14, 1971, the defendant commissioner, pursuant to §§ 13a-73 (b) and 13a-73 (f) of the General Statutes, filed with the clerk of the Superior Court in Fairfield County a certificate of taking and assessment of damages relating to certain real property owned by the plaintiffs and located in the town of Wilton. Before the taking, the plaintiffs owned a total of 96.34 acres, from which the defendant took by eminent domain a 31.3 acre strip of land, on which a number of buildings were situated, together with easements and rights-of-way over the remaining property for the purpose of the relocation of U.S. route 7, also known as the Norwalk-Danbury Road and Danbury Road. As a result of the taking of the land and buildings thereon, the plaintiffs were left with two separate parcels of land: a 57.223 acre tract located south of the strip taken on which the main residence, a pond and a driveway were situated; and a triangular shaped 7.817 acre tract located north of the taking. The damages assessed by the defendant by virtue of the taking were $243,500.

The plaintiffs, pursuant to § 13a-76 of the General Statutes, filed a timely appeal to the Superior Court from the defendant's assessment of damages, claiming that the damages fixed by the defendant were inadequate, and seeking a review of the assessment and a reappraisal of the damages. Thereupon, the court ordered the appointment of a state referee (*Hon. Sidney A. Johnson*) to hear the plaintiffs' appeal. General Statutes § 13a-76. In accordance with a further application, the court[1] ordered the appointment of two additional referees (*Hon. James E. Murphy* and *Hon. Samuel Mellitz*) to act in this matter.

Two members of the committee concluded that, before the taking, the fair market value of the entire subject property, including existing buildings and improvements, was $1,010,725. One member of the committee, however, Honorable Samuel Mellitz, concluded that, due to the existence of a reasonable probability of a zone change, the before-taking fair market value of the plaintiffs' land and buildings totaled $1,920,454. The full committee was in substantial agreement regarding the fair market value of the land remaining after the taking—the majority found the after-taking value to be $1,344,359, while the dissent set a value of $1,344,429. But since the majority concluded that "the 'after taking' value was the direct result of special benefits conferred upon the remaining land," and since its "before

---

[1] Under 1967 Public Acts, No. 772 (b), in condemnation proceedings where the assessment exceeds the sum of $200,000, the court, on its own motion, had the discretion to refer the proceedings to a committee of three referees. The present § 52-434a of the General Statutes provides that, in such cases, the court refer the proceedings to the chief court administrator for referral to a committee of three referees.

taking" valuation of the entire tract was less than the market value of the land remaining after the taking, it concluded that the plaintiffs sustained no damages as the result of the taking and that they received special benefits of $333,643. The dissenting member of the committee, however, concluded that damages resulting from the taking amounted to $576,025.[2]

From the judgment of the majority of the committee of three state referees ordering that the plaintiffs pay to the defendant the amount of the benefits in the sum of $333,643 and interest to the date of payment, the plaintiffs have appealed to this court.[3] Although the plaintiffs make what might be regarded as a "wholesale attack" on the majority's finding; see *Scribner v. O'Brien, Inc.*, 169 Conn. 389, 391, 363 A.2d 160; the pertinent claims of error raised by the plaintiffs in this appeal may be summarized in the following manner: (1) the findings and a judgment thereupon must be made by unanimous act of the entire committee of three referees pursuant to § 52-434a (b); (2) the issue of benefits was not within the jurisdiction of the court and the judgment was therefore void; (3) if the question of benefits was properly considered, benefits may not be assessed in excess of the damages sustained; and (4) the majority erred in its conclusion regarding the market value of the subject property before the taking. Our disposition of the first two issues raised by the plaintiffs makes it unnecessary to address the remaining issues.

[2] In view of our disposition of this appeal, we have not attempted to resolve the apparent arithmetical inconsistencies which appear in the majority's finding and judgment.

[3] The plaintiffs' motion to open the judgment and motion to vacate the judgment were denied by the full committee.

## I

It is settled law in this state that "where the determination of matters of public concern as distinguished from those of private confidence are committed to a group of persons, the decision of a majority, at least where all have acted together in hearing and considering the matter at issue, is a valid and effectual performance of the duty entrusted to them. *Crone* v. *Daniels,* 20 Conn. 331, 333; *Gallup* v. *Tracy,* 25 Conn. 10, 17; *Martin* v. *Lemon,* 26 Conn. 192, 193; *Smith* v. *New Haven,* 59 Conn. 203, 211, 22 Atl. 146." *Dunn* v. *Flynn,* 107 Conn. 272, 274, 140 A. 204; see also *Omaha* v. *Omaha Water Co.,* 218 U.S. 180, 193, 30 S. Ct. 615, 54 L. Ed. 991; 66 Am. Jur. 2d, References § 30. As early as 1846, this court promulgated the rule that "an authority imposed by law for public purposes, and especially for purposes of a judicial character, may be executed by a majority, if all have been legally notified to act." *Middletown* v. *Berlin,* 18 Conn. 189, 197; *Congress Bank & Trust Co.* v. *Brockett,* 111 Conn. 490, 492, 150 A. 742. On the other hand, the case of arbitrators chosen by private persons is distinguishable from "the awards of referees and auditors, who derive their power to administer justice, by the *act of law." Patterson* v. *Leavitt,* 4 Conn. 50, 53; *Dunn* v. *Flynn,* supra, 274–75.

In the present case, a matter of public concern was entrusted to a committee whose power to administer justice was derived by law. See the present §§ 13a-76, 52-434 and 52-434a of the General Statutes;[4] see *Florida Hill Road Corporation* v. *Com-*

[4] The statutes in effect at the time of the reference in this case were, in all relevant respects, identical to those which exist at the present time. See footnote 1, supra.

*missioner of Agriculture,* 164 Conn. 360, 321 A.2d 856. The fact that such statutes are silent as to the validity of majority action does not connote a requirement of unanimity; to the contrary, in the absence of a specific statutory direction, the law decrees that a majority may act. *Cannon* v. *Cannon,* 111 Conn. 589, 591–92, 151 A. 166. Moreover, "[t]he very fact that in the statute before us an odd number of . . . [referees] is specified suggests that the legislature had in mind the possibility of a disagreement." *Dunn* v. *Flynn,* supra, 275.

We hold, therefore, that the judgment of a majority of a committee composed of three state referees is not invalid for lack of unanimity.

## II

The plaintiffs attack the committee's jurisdictional authority to consider the question of special benefits in their reassessment. Section 13a-73 (b) of the General Statutes[5] provides that, upon the taking of a person's land for state highway purposes, the commissioner of transportation shall assess damages and benefits resulting from such taking and shall file the assessment with the clerk of the Superior Court in the county in which the land

[5] "[General Statutes] Sec. 13a-73. ACQUISITION OF REAL PROPERTY. . . . (b) CONDEMNATION OF LAND FOR STATE HIGHWAY OR HIGHWAY MAINTENANCE STORAGE AREA OR GARAGE. The commissioner may take any land he finds necessary for the layout, alteration, extension, widening, change of grade or improvement of any state highway or for a highway maintenance storage area or garage and the owner of such land shall be paid by the state for all damages and the state shall receive from such owner the amount or value of all benefits resulting from such taking, layout, alteration, extension, widening, change of grade or other improvement. . . . The assessment of such damages and of such benefits shall be made by the commissioner and filed by him with the clerk of the superior court in the county in which the land affected is located, and such clerk shall give notice of such assessment to each person having an interest of record therein

affected is located. Following such filing, the clerk is required to give notice of such assessment to each person having an interest of record in the affected property. If the property owner affected chooses not to accept the initial assessment of the commissioner; see § 13a-74; that person may appeal to the Superior Court pursuant to § 13a-76[6] which authorizes a "reassessment of such damages or such benefits" as may have been assessed by the commissioner.

by mailing to each a copy of the same, postage prepaid, and, at any time after such assessment has been made by said commissioner, the physical construction of such layout, alteration, extension, widening, maintenance storage area or garage, change of grade or other improvement may be made. . . . Upon filing an assessment with the clerk of the superior court, the commissioner shall forthwith sign and file for record with the town clerk of the town wherein such real property is located a certificate setting forth the fact of such taking, a description of the real property so taken and the names and residences of the owners from whom it was taken. Upon the filing of such certificate, title to such real property in fee simple shall vest in the state of Connecticut except that, if it is so specified in such certificate, a lesser estate, interest or right shall vest in the state."

[6] "[General Statutes] Sec. 13a-76. APPEAL. Any person claiming to be aggrieved by the assessment of such special damages or such special benefits by the commissioner may, at any time within six months after the same has been so filed, apply to the superior court for the county within which such land is situated or, if said court is not in session, to any judge thereof for a reassessment of such damages or such benefits so far as the same affect such applicant, and said court or such judge, after causing notice of the pendency of such application to be given to said commissioner, shall appoint a state referee to make such reassessment of such damages or such benefits. Such referee, having given at least ten days' notice to the parties interested of the time and place of hearing, shall hear the applicant and said commissioner, shall view the land and take such testimony as such referee deems material and shall thereupon reassess such damages and benefits so far as they affect such applicant and forthwith report to the court. If the amount of the reassessment of such damages awarded to any such property owner exceeds the amount of the assessment of such damages by the commissioner for such land, said court or such judge shall award to such property owner such appraisal fees as said court or such judge determines to be reasonable. . . ."

In the present case, the defendant commissioner's assessment stated, in pertinent part, that *"this assessment of damages"* (emphasis added) was filed with the clerk of the Superior Court in the appropriate county as required by statute, and concluded with the following: "Damages are assessed at $243,500.00." The assessment made no reference to the finding of benefits.[7] In accordance with § 13a-76, the plaintiffs took a timely appeal to the Superior Court from the "Assessment of Damages" filed by the defendant requesting "a review of said Assessment and reappraisal of damages fixed therein."

---

[7] The following assessment was filed by the defendant in the present case:

| "Paul J. Hanson | | 5 5 8 8 |
| Elizabeth G. Hanson | | SUPERIOR COURT |
| | | FAIRFIELD COUNTY |
| | | JUNE 10, 1971 |

Pursuant to the provisions of Section 13a-73 (b) and (f) of the 1969 Supplement to the General Statutes the premises hereinafter described are found to be necessary for the layout, alteration, extension, widening, change of grade and improvement of the highway commonly known as the Relocation of Route U.S. 7, Wilton-Norwalk Road and the same are hereby taken, and this assessment of damages resulting therefrom is hereby filed with the Clerk of the Superior Court in the County in which said premises are located.

Said premises are situated in the Town of Wilton, County of Fairfield and State of Connecticut, on the northerly side of Present Route 33-Westport Road and bounded: (Description follows . . . ).

Said premises stand on record in the names of Paul J. Hanson and Elizabeth G. Hanson.

Damages are assessed at $243,500.00.

A. Earl Wood
Commissioner of Transportation
State of Connecticut

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
George S. Koch
Deputy Transportation Commissioner
Bureau of Highways
Duly authorized.                    "

We agree with the claim of the plaintiffs in this appeal that, in view of the foregoing, the committee was without authority to assess benefits found to be occasioned by the taking, therefore rendering the judgment invalid.

The procedure mandated by § 13a-74 of the General Statutes is to deduct "any benefits which have been assessed" from the amount of damages found to have been due the landowner. Necessarily, "[t]his process requires the ascertainment of two distinct facts, the extent to which the owner is damaged, and the extent to which he is benefitted, by the taking of his land and the putting through of the public improvements. The proceedings for the determination of these facts, are regarded as separate and distinct, and in a sense independent of each other. *Newton's Appeal*, 84 Conn. 234, 79 Atl. 742." *Heublein, Inc.* v. *Street Commissioners,* 109 Conn. 212, 216, 146 A. 20. Only when the commissioner files a separate assessment of damages and benefits, as he did, for instance, in *Gabriel* v. *Cox,* 130 Conn. 165, 167, 32 A.2d 649, and *Munson* v. *MacDonald,* 113 Conn. 651, 654, 155 A. 910, can it be said that the landowner has been properly apprised and put on notice of the action taken by the state. Moreover, since § 13a-78 provides that the amount of benefits assessed by the commissioner "shall constitute a lien upon the land against which such benefits were assessed from the date such assessment was filed," it is readily apparent that the legislature contemplated that an assessment of benefits, if any, be made specifically by the commissioner in the first instance. In this regard, it is interesting to note that in the *Munson* case, supra, 653, Chief Justice

Maltbie underscored the statutory requirement that the assessment of such damages and benefits "shall be made" by the commissioner.

It is clear, as the defendant points out, that in cases where, as here, only a portion of the land-owner's property is taken, the usual measure of damages is the difference between the market value of the whole tract with its improvements before the taking and the market value of what remained after the taking. *Meriden* v. *Highway Commissioner,* 169 Conn. 655, 659–60, 363 A.2d 1094; *Lynch* v. *West Hartford,* 167 Conn. 67, 73, 355 A.2d 42; *Connecticut Ry. & Lighting Co.* v. *Redevelopment Commission,* 161 Conn. 234, 239, 287 A.2d 362. The fact that this "before and after" rule of computation may have governed the commissioner's determination of damages in the present case, however, does not prevent him from separately assessing special benefits as we have indicated is required. See *Heublein, Inc.* v. *Street Commissioners,* supra, 215–16. Indeed, the majority's finding in this case specifically apportioned the amount of special benefits which it concluded increased the "after taking" valuation of the plaintiffs' remaining property. Although the separate determination of damages and benefits should lead to the same result as the "before and after" procedure, the defendant's failure, in this case, to follow the statutory requirements so as to inform the plaintiffs and put them on notice that benefits were in fact assessed operated as a limitation on the committee's statutory reassessment authority under § 13a-76 and circumscribed the true nature of the appeal and the scope of the plaintiffs' pleadings in taking their appeal. These circumstances can, of course, be distinguished from a case in which the taking authority's initial

assessment includes a determination of both benefits and damages but the court, on appeal, fails to find the amount of benefits and damages by separate determination. See *Bissell* v. *Bethel,* 113 Conn. 323, 326–27, 155 A. 232 (394 Rec. & Br. 177–78, April Term, 1931).

It is necessary to the validity of the judgment "that the court should have had jurisdiction of the precise question which its judgment assumes to decide, or of the particular remedy or relief which it assumes to grant." *New Haven Sand Blast Co.* v. *Dreisbach,* 104 Conn. 322, 329–30, 133 A. 99. In the absence of pleadings upon which a judgment assessing benefits may properly be founded, and in view of the statutory restrictions upon the referees' authority to reassess an award of the commissioner, the judgment rendered in this case cannot stand. Id.

There is error, the judgment is set aside and the case is remanded with direction to recommit it for the determination of damages in accordance with this opinion.

In this opinion the other judges concurred.