[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, The Manchester Sand Gravel Company, has appealed from an assessment of damages of $1,004,500 made by the defendant Commissioner of Transportation for taking two parcels of the plaintiff's land from a tract of 70.92 acres situated on the west side of Interstate Route 84 and on the south side of Tolland Turnpike in the town of Manchester. Both parcels were acquired by the state in connection with the construction of Interstate Route 291, and are described in the notice of condemnation (Ex. 1) filed on July 31, 1991, the date of condemnation as stipulated by the parties, and in the taking map (Ex. C). Pursuant to the notice, the state also took various easements over 0.32 acres and rights over 150 square feet of the remaining land of the plaintiff along Tolland Turnpike as described in such notice and map.
Although the taking map (Ex. C) shows the larger parcel taken in fee by the state to be 20.54 acres, the class A2 survey presented by the plaintiff (Ex. D) indicates that this parcel measures 21.76 acres. An additional 0.03 acres was added to this calculation during the trial of the appeal when it was discovered that a strip of land thirty feet wide along the easterly boundary of other land owned by the state, over which the state held a right of way, had not been included in the taking map (Ex. C). The parties have stipulated that the total area of the larger parcel taken is 21.79 acres.
The smaller parcel taken is triangular in shape, being five feet wide at its base and tapering for a distance of 168 feet to its apex along the southerly line of Tolland Turnpike. Both the taking map and the plaintiff's survey indicate the area of this parcel to be 0.01 acre. The easements and other rights taken by the state apply to the remaining land of the plaintiff within a short distance of the southerly line of Tolland Turnpike. The total area of both parcels taken by the state is 21.80 CT Page 7326 acres.
The taking has resulted in leaving the plaintiff with two remaining pieces of land separated by a highway, access to which from each piece is prohibited. These are designated as parcel 3, 14.56 acres, and parcel 4, 34.59 acres, on the plaintiff's survey (Ex. D). Parcel 3 has 439.99 feet (Ex. B, p. 16) of frontage on Tolland Turnpike, but parcel 4 is landlocked, being bounded by a non-access highway and by land of other property owners. The defendant commissioner agrees that parcel 4 is landlocked and his appraisers have based their estimates of damages for the taking on that assumption.
The plaintiff's appraiser, Peter Marsele, valued the 70.92 acres of land before the taking at $75,000 per acre for a total of $5,319,000. (Ex. B, p. 4). One of the commissioner's appraisers, John DeLucco, valued the land, using 70.90 acres as the area and $25,000 per acre as the unit value, at $1,772,500. (Ex. 3). The commissioner's second appraiser, Richard Barry, used the same unit value and acreage figures, and he arrived at precisely the same valuation before the taking. (Ex. 2, p. 18).
In appraising the land remaining after the taking, the three appraisers agreed that the unit value of parcel 4, consisting of 34.59 acres, had been greatly reduced because it is now landlocked. Marsele estimated a unit value of $7,000 per acre for parcel 4. (Ex. B, p. 8). DeLucco's unit value for this land was $5,500 per acre and that of Barry was $3,000 per acre. (Ex. 3, p. 44; Ex. 2, p. 33).
The three appraisers also agreed that the unit value of parcel 3, consisting of 14.56 acres, had increased as a result of the taking. Marsele increased his value per acre from $75,000 to $77,000. (Ex. B, p. 6). DeLucco's value per acre increased from $25,000 to $45,000. (Ex. 3, p. 46) and Barry's value per acre increased from $25,000 to $47,500. (Ex. 2, p. 28). DeLucco, however, made a separate allowance of $7,200 for the easements and other rights taken by the state affecting the area of parcel 3 closest to Tolland Turnpike. (Ex. 3, p. 49). No such allowance was made by the other appraisers, who may have considered that factor in arriving at their unit values. CT Page 7327
 I
After considering the evidence and viewing the property affected by the taking, as well as several of the properties relied upon by the appraisers as comparable sales, the court has concluded that the unit value of the 70.92 acre tract on the taking date was $55,000 per acre and that the fair market value of the property was $3,900,600. This valuation is based on a finding, supported by the three appraisers, that the highest and best use of the property was for an industrial development as permitted in the industrial zone in which the land is situated.
In its post-trial brief, the plaintiff relies for support of Marsele's unit value of $75,000 per acre mainly on a sale of 46.7 acres of land on Hale and Slater roads in Manchester at a price of $109,126 per acre on December 29, 1986. In addition to the lapse of four and one half years to the taking date, that sale is subject to two other major infirmities as a guide to the fair market value of property in the same general area: (1) the price of the land, $5,100,000, was probably enhanced by the arrangement for financing the sale, by which the buyer was required to pay only $100,000 in cash, the seller having accepted a purchase money mortgage for the balance; (2) the land was purchased in the belief that its zone would be changed from industrial to commercial, an expectation that was fulfilled six months later as an expansion of a well developed adjacent commercial area. The plaintiff's property also presented some special problems as a site for industrial development, because it has been used for depositing fill removed in the course of constructing Interstate Route 84. The plaintiff's engineer, Glenn Mirtl, testified that approximately $900,000 of special development costs would be required for compaction and other measures necessary to prepare the land for building and road construction. There is no evidence of any similar problem on the Hale and Slater road land.
The principal drawback with respect to the comparable sales used by the commissioner's appraisers is that their net adjustment discounts, varying from sixty percent to seventy-five percent, from the actual selling CT Page 7328 prices of the three properties relied upon, indicate that those properties are not truly comparable to the subject property. The sale of 10.3 acres at 375 New state Road, Manchester, which is closest in distance from the subject property, at a unit price of $92,000 per acre, was discounted seventy per cent by DeLucco to arrive at his estimated unit price of $25,000 for the subject property. In reaching the same estimated unit price for the subject property, Barry used a net discount if seventy-five per cent from the actual unit price of 375 New State Road. The plaintiff's engineer, Mirtl, testified that the special development costs for the purpose of reversing the slope of this land would amount to $480,000 or $46,602 per acre to be added to the $92,000 per acre sale price.
 II
The court agrees with the three appraisers that the fair market value of parcel 3, 14.56 acres, has increased as a result of the taking, despite the loss of 0.01 acre taken by the state in fee and the easements affecting a portion of the frontage on Tolland Turnpike. A broader market is available for the sale of 14.56 acres than for the sale of 70.92 acres. The development costs also would be less for parcel 3, because it fronts upon an accessible public highway and would not require the installation of roads and utilities for such a great distance as would be necessary to develop the rear acreage of the entire tract. We note that, in discounting the 70.92 acre tract for size and shape in comparison to the 10.3 acre sale at 375 New state Road, DeLucco used 15% (Ex. 3, p. 33) and Barry used 30% (Ex. 2, p. 17). Marsele made allowances of 10% for size and shape with respect to the sale of 46.7 acres at Hale and Slater Roads and 20% with respect to three other sales of 4.08 acres, 2.82 acres and 2.17 acres.
The court concludes that the unit value of parcel 3 has been increased to $60,500 as a result of the taking and that its fair market value after the taking of this 14.56 acre parcel was $880,880. A special allowance, however, must be made for the easements and other rights that the state has imposed on parcel 3. We find that a fair allowance for these encumbrances is $7,200, making the net market value of parcel 3 after the taking $873,680. CT Page 7329
In the notice of condemnation the commissioner assessed $312,000 of benefits on the basis of the increase in value of parcel 3 after the taking. Our calculation of the increase in value of that parcel after the taking is $72,880. The commissioner contends that, because the complaint alleges only that the "damages" are inadequate, the plaintiff cannot now question the amount of benefits stated in the notice.
In Hanson v. Commissioner of Transportation,176 Conn. 391, 396-401 (1979), the notice of condemnation filed by the commissioner declared only that "damages" in a certain amount had been assessed and made no reference to an assessment of benefits. On the owners' appeal therefrom, the committee concluded that the taking had conferred special benefits upon the remaining property of the owners that caused its value to exceed that of the original property before the taking and accordingly, ordered that the owners pay to the state the amount of that increase. The judgment of the committee was reversed on appeal, however, because neither the notice nor the complaint had made any reference to an assessment of benefits and the committee was without subject matter jurisdiction to render a judgment assessing benefits. The court concluded that the commissioner's failure "to follow the statutory requirements so as to inform the [owners] and put them on notice that benefits were in part assessed operated as a limitation on the committee's statutory reassessment authority . . . and circumscribed the true nature of the appeal and the scope of the [owners'] pleadings in taking their appeal. Id., 400.
In this case, the commissioner's reliance on Hanson as requiring acceptance of his assessment of benefits as stated in the notice because of the absence of any explicit reference to that assessment in paragraph 3 of the complaint is misplaced for two reasons. First, the phrase, "such assessment of damages" in paragraph 3 of the complaint plainly refers to paragraph 1 thereof, which recites that the commissioner has "assessed as damages the sum of $1,316,750 and benefits of $312,000 or net damages of $1,004,500." The "damages" for which a reassessment is sought in paragraph 3 are obviously the "net damages of $1,004,500," and any reappraisal of the "net damages" would necessarily require an examination of both components of CT Page 7330 that figure, the amounts of the gross damages and of the benefits assessed. It is evident that the commissioner understood full well that both of these elements of the net damages assessment were at issue on appeal, because the reports of his appraisers addressed both.
Second, the predicate to the decision in Hanson was that the notice of condemnation had failed to indicate that any assessment of benefits had been made. "Only when the commissioner files a separate assessment of damages and benefits. . . can it be said that the landowner has been properly apprised and put on notice of the action taken by the state." Id., 399. In this case the amounts of gross damages and benefits were separately stated, thus affording the requisite notice to the plaintiff. Its complaint, which implicitly refers to both these components of the net damages figure, adequately informed the commissioner that both were to be reappraised in this appeal.
 III
The commissioner does not dispute the claim of the plaintiff that the remaining 34.59 acres, parcel 4, is landlocked, leaving the plaintiff with no legal right of access thereto except by helicopter.
The three appraisers used unit values of $7,000 (Marsele), $5,500 (DeLucco) and $3,000 (Barry) per acre in estimating the fair market value of this land after the taking, substantial reductions from the unit values they used before the taking. We are persuaded that a unit value of $3,000 per acre is appropriate. That figure is supported by two comparative sales of landlocked parcels, one in Manchester at $1,949 per acre and one in South Windsor at $3,667 per acre, to abutting landowners. (Ex. 2, pp. 25-28). Part of the land adjoining parcel 4 is owned by a trust for Wickham Park and the remainder by the state. There is no evidence that either of these owners is presently interested in acquiring additional land. We conclude that the fair market value of parcel 4 after the taking was $103,770.
 IV
A summary of our conclusions as to the value of the CT Page 7331 plaintiff's property before and after the taking as well as our calculation of the resulting damages is as follows:
Before: 70.92 acres @ $55,000 = $3,900,600
After: 14.56 acres @ $60,500 — $7,200 = $ 873,680 34.59 acres @ $ 3,000 = $ 103,770 --------- TOTAL 977,450
DAMAGES: $3,900,600 — $977,450 = $2,923,150
Of the $2,923,150 that we have found as damages for the taking, the state has paid $1,004,500 pursuant to the assessment in that amount as stated in the notice of condemnation. It is ordered that judgment enter for the plaintiff to recover of the defendant the balance of the damages found, $1,918,650, plus interest thereon "at a rate that is reasonable and just" pursuant to General Statutes37-3c from July 31, 1991, together with costs pursuant to General Statutes 13a-77 and a reasonable appraisal fee of $4,000. If the parties are unable to agree upon the rate of interest, we will hold a further hearing.
David M. Shea State Trial Referee
Simon S. Cohen State Trial Referee
William C. Bieluch State Trial Referee