AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EM-
PLOYEES, AFL-CIO, *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.*
LOUIS GIORDANO, Indiv. and as Director of the Illinois Department of
Personnel, Defendant-Appellee and Cross-Appellant.

Fourth District    No. 4—82—0638

Opinion filed April 18, 1983.

Gilbert Feldman, of Cornfield and Feldman, of Chicago, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Imelda R. Terrazino,
Assistant Attorney General, of counsel), for appellee.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Sangamon County which dismissed their complaint, holding that it lacked jurisdiction.

The controversy centers about a reduction in health benefits provided by the State. Plaintiffs are the collective bargaining agents for certain groups of employees of the State and the defendant is the Director of Personnel of the State. As such the defendant is responsible for the administration of the State Employees Group Insurance Act of 1971. (Ill. Rev. Stat. 1981, ch. 127, par. 521 *et seq.*) The complaint alleged that the defendant unilaterally and without negotiations with the plaintiffs reduced health and insurance benefits effective July 1, 1981. It was originally filed in Cook County, but on motion of the defendant venue was transferred to Sangamon County.

The complaint sought a declaration of plaintiffs' rights and injunctive relief commanding the defendant to restore benefits to the level maintained prior to July 1, 1981. The suit was filed in October 1981 and in April 1982 plaintiffs moved for summary judgment on the basis that the defendant had not responded to it. The defendant then responded by filing a motion to dismiss under section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—615) alleging legal insufficiency of the complaint by reason of sovereign immunity (Ill. Rev. Stat. 1981, ch. 127, par. 801). The trial court ordered the parties to proceed on plaintiffs' motion for summary judgment.

The defendant then filed a memorandum in opposition to the motion. As exhibits to it, the collective bargaining agreements with the plaintiffs were submitted, and each of these contained comprehensive four-step grievance procedures leading to binding arbitration. Also attached was the affidavit of Peter Vallone, the State's chief labor negotiator, in which he stated that none of the plaintiffs had filed grievances regarding insurance benefits. The defendant also maintained in the memorandum that the collective bargaining agreements did not specify what health and life insurance benefits union employees were to receive and that such benefits need not be, and were not, the subject of collective bargaining or negotiation by the State. Vallone's affidavit stated that Executive Order No. 6, signed by Governor Walker in 1973, provided that State insurance benefits were not to be the subject of collective bargaining, and that such benefits had never been the subject of negotiations.

The trial court denied the motion for summary judgment. A controversy then arose over the written order to be entered. Plaintiffs

submitted an order which provided in pertinent part:

"1. The contract issues raised in this cause are hereby resolved to arbitration before an arbitrator to be selected by the parties; and

2. This Court retains jurisdiction for the purpose of resolving any procedural or other questions that may arise in connection with said arbitration."

The defendant objected to the order, primarily on the basis that the question of health insurance benefits was not subject to arbitration, and stated further in his memorandum in opposition to plaintiffs' order:

"It is explicitly conceded in each contract that the question of the arbitrability of any issue is for the arbitrator to decide. Thus, if the Plaintiffs filed a grievance, the first question would be whether or not the grievance was permissible under the collective bargaining agreement."

The defendant then submitted his own order which provided in pertinent part:

"The COURT FINDS AS FOLLOWS:

1. The Defendant contends that the Plaintiffs may not bring this action because the contracts upon which the Plaintiffs' claims are founded provide for binding arbitration.

2. The Plaintiffs agree that the Court lacks jurisdiction because of the binding arbitration provision.

WHEREFORE, the Court hereby orders that Plaintiffs' Complaint be dismissed. [The Plaintiffs are, of course, free to file grievances under the grievance procedures in their respective contracts. This order should not be construed to decide whether the question in issue is arbitrable.]"

The trial court signed the defendant's proposed order but struck therefrom by overlineation with a felt pen the bracketed material. Plaintiffs have appealed from this order, and the defendant has cross-appealed from the trial court's failure to dismiss on the basis of sovereign immunity. So far as the record discloses, that motion was never specifically ruled upon below.

The principal difficulty with this case is that both sides have assumed something which has not taken place: arbitration. Plaintiffs, by urging that the cause be remanded for arbitration under supervision of the circuit court, assume the very fact in issue, namely, that the matter is arbitrable. Defendant, by urging sovereign immunity, assumes that an arbitration has been ordered. Neither position is tenable.

Plaintiffs' position is rather inconsistent. They agree that the trial court was without jurisdiction; yet they desire that the court retain jurisdiction to supervise arbitration. There is no middle ground. Either the trial court has jurisdiction or it does not. Plaintiffs point to the Federal system (*e.g.*, *Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International* (1962), 370 U.S. 254, 8 L. Ed. 2d 474, 82 S. Ct. 1346; *John Wiley & Sons, Inc. v. Livingston* (1964), 376 U.S. 543, 11 L. Ed. 2d 898, 84 S. Ct. 909), wherein the trial court determines the issue to be arbitrable and then remands to the arbitrator for decision of both procedural issues and the merits. Plaintiffs urge economy of judicial time and effort in support of this system. However appealing such an argument may be, it is not the law of Illinois.

In this State the procedure is controlled by section 2(a) of the Uniform Arbitration Act (Ill. Rev. Stat. 1981, ch. 10, par. 102(a)), which provides as follows:

> "On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party, otherwise, the application shall be denied."

In the instant case even a most liberal reading of plaintiffs' complaint will not yield a conclusion that arbitration is demanded and that the defendant has refused. As has been indicated, the prayer was for a declaration of rights and for mandatory injunctive relief. While there is a strong indication growing out of defendant's memorandum in response to plaintiffs' motion for summary judgment that he will refuse arbitration, there is nothing in the record to indicate that arbitration has been so demanded and refused.

Quite the contrary is apparent. The collective bargaining agreements all specify a four-step procedure; arbitration, if it is to take place, does not occur until step number four; it is admitted that steps one through three have never even been attempted, as shown by the Vallone affidavit. The rule in this State is that a complaint must show on its face that all grievance procedures under the collective bargaining contract have been exhausted. *Gordon v. Thor Power Tool Co.* (1965), 55 Ill. App. 2d 389, 205 N.E.2d 55.

■ The short of the matter is that plaintiffs' complaint was altogether premature. The trial court was correct in dismissing it on that basis for lack of jurisdiction. There is no provision in Illinois law for

retained jurisdiction in such cases.

Many of the same considerations apply to the defendant's cross-appeal on the issue of sovereign immunity. In his original motion to dismiss, this was the primary issue, but in his response to the plaintiffs' motion for summary judgment his primary opposition was the failure to exhaust administrative remedies, *i.e.*, the grievance procedures under the collective bargaining agreements. It was his order, with deletions as explained above, that was entered by the trial court and that order makes no reference, either in the deleted language or in the language left intact, to sovereign immunity.

Nevertheless, defendant maintains that sovereign immunity goes to the question of subject matter jurisdiction, which cannot be waived and can be raised at any time, even on appeal, citing *Talandis Construction Corp. v. Illinois Building Authority* (1978), 60 Ill. App. 3d 715, 377 N.E.2d 237. He also argues that an appellee may urge any point in support of the trial court's judgment on appeal, even though the trial court did not rule upon it, provided the factual basis for such point was before the trial court, citing *Shaw v. Lorenz* (1969), 42 Ill. 2d 246, 246 N.E.2d 285.

These propositions are undoubtedly true, but in our opinion the question in the instant case is ripeness; that is, whether this litigation has reached the stage at which sovereign immunity would be a viable defense. We think not.

■ The broad doctrine of sovereign immunity is well known. The Illinois Constitution of 1970 abolished it, "[e]xcept as the General Assembly may provide by law." (Ill. Const. 1970, art. XIII, sec. 4.) The legislature provided:

> "Except as provided in 'An Act to create the Court of Claims, to prescribe its powers and duties, and to repeal An Act herein named,' filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court." (Ill. Rev. Stat. 1981, ch. 127, par. 801.)

The determination of whether an action is against the State of Illinois unless proscribed by law depends not just on identification of the formal parties to the record, but also on issues involved in the relief sought. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 384 N.E.2d 310.) When a suit is brought against a State agency or its officers which concerns matters in which the defendants represent the State in their actions and which may expose the State to liability is in effect a suit against the State even though the State is not a formal party to the record. (*Talandis.*) However, when a State officer performs acts which are illegal or beyond his authority or purports to act

under the authority of an unconstitutional statute, a suit brought against that officer is not considered to be against the State. *Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975.

■ In the present posture of the instant case it is impossible to determine whether the State may be exposed to liability (*Talandis*), or whether this is a case of illegal actions by a State officer (*Sass*). Those questions will necessarily be decided in a proceeding either to enforce or to stay arbitration. Without attempting to prejudge the matter, we would observe that if arbitration is properly ordered, sovereign immunity might be a defense since the arbitration could expose the State to liability. On the other hand, if arbitration is stayed, the question of liability becomes moot.

In summary, since the plaintiffs' complaint is premature, the case is not yet ripe for a determination of whether the doctrine of sovereign immunity may apply.

For all the foregoing reasons, the order of dismissal entered by the circuit court of Sangamon County is affirmed.

Affirmed.

MILLS and GREEN, JJ., concur.