[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This memorandum concerns certain post-judgment motions for modification that were made by the parties. In order to put the situation into proper perspective, the following finding of facts has been derived from the evidence received at the hearing of November 4, 1991 and from an examination of the file.
The parties were married on May 30, 1987 and have not had children. During their marriage they purchased a house at 31 Edith Street, Oakville for approximately $132,000.00. The downpayment and closing costs which, together totaled $18,000.00 were furnished by the plaintiff. After marriage, she had received a worker's compensation award for an injury occurring many years earlier. The balance of the purchase price was supplied by mortgage from the Derby Savings Bank. In addition to the parties, the defendant's parents are also signatories on the mortgage note and deed. Currently, the balance due on the mortgage is $114,416.72.
By a pro se complaint dated August 21, 1989, the plaintiff commenced an action to dissolve the marriage. Throughout the dissolution proceeding, neither party was represented by an attorney. On December 1, 1989, a written stipulation was filed wherein the parties stated that: "(1). . .their marriage has broken down irretrievably and that neither is seeking any alimony from the other" [and] (2) "until such time as the property at 31 Edith Street, Oakville, is sold the. . .parties will continue to divide the mortgage and maintenance costs equally."
The hearing on the dissolution of the marriage was scheduled for January 16, 1990. Both parties were in attendance and they CT Page 10235 presented the court with a formal written agreement that they had executed earlier on that day. The agreement was incorporated into the decree by the notation that "the parties' bills and real estate are to be handled as per their written agreement."
At issue presently is a portion of Article I of the formal agreement which provides as follows: "Both parties have also agreed until such time as the property at 31 Edith Street, Oakville, Connecticut is sold, the mortgage and maintenance costs will be equally divided, i.e. mortgage, heat, and insurance. Any equity realized upon the sale of the property at 31 Edith Street shall be awarded to the wife. Should a loss in equity occur at the time of the sale of this property, the details of loss apportionment will be considered at such time."
The terms of the formal agreement had been discussed between the parties; but the agreement, itself, was typed by the defendant and examined only cursorily by the plaintiff before signing. With respect to article I, however, both parties understood that the term "equity", appearing therein, referred to a sale price that, at the least, would enable the plaintiff to recover her initial cost of $18,000.00. Before the formal agreement was executed, the defendant told the plaintiff that he did not want her to lose the money she had put into the house.
At or prior to the entry of the decree of dissolution, the defendant moved from the marital residence. He and the plaintiff, who remained in occupancy, have continued to divide the mortgage payments and other monthly charges equally as set forth in Article I of their formal agreement.
The house at 31 Edith Street did not sell. On August 10, 1990, the defendant, now represented by counsel, moved for a modification of the dissolution judgment on a ground, among others, that "the judgment file failed to clearly address issues [including] the marital residence of the parties." The defendant's motion promoted a written stipulation on August 27, 1990, signed by both parties and their respective attorneys and accepted by the court. In the stipulation, the parties agreed that their house would be listed with a realtor for six months and, in the event of a sale, a commission of 5% would be paid; that any offer in excess of $129,000.00 would be accepted; that the net proceeds of the sale would go to the plaintiff; and that the defendant was to pay the plaintiff the sum of $6,000.00 at or before the closing of any such sale.
Unfortunately, no offers to purchase were received and on May 14, 1991 the defendant, acting through his attorney, renewed his motion to modify. The renewed motion brought forth a second stipulation signed by the parties and their lawyers which the CT Page 10236 court accepted. In the second stipulation, dated July 1, 1991, the defendant was to convey his interest in the house to the plaintiff and pay her $9,000.00 as reimbursement for one-half of her original investment. Performance by the defendant was made contingent on the plaintiff being able to refinance the house within six weeks and thus pay off the existing mortgage on which the defendant's parents, as well as himself were liable.
Almost contemporaneous with the second stipulation was the side agreement signed by the parties on July 6, 1991. Pursuant to this agreement, the parties agreed to accept an offer as low as $119,900 and to pay a 5 or 6% real estate commission.
The plaintiff's attempts to refinance proved unsuccessful and no acceptable offers were received. On October 18, 1991, the defendant, now represented by a different attorney filed a "Motion For Modification" that alleged: the expiration of the six week period in which the plaintiff was to refinance as per the second stipulation; the defendant's acceptance of an offer of $118,000.00 for the house at 31 Edith Street, Oakville and the plaintiff's refusal to accept said offer.
On her part, the plaintiff also filed a "Motion For Modification" on November 1, 1991. Her motion recited that the parties had accepted the offer to purchase and that the sale will result in a substantial loss. In the plaintiff's motion, an apportionment of the loss is requested pursuant to Article I of the parties formal dissolution agreement. On November 4, 1991, the plaintiff's motion was amended to include a claim for an attorney's fee.
At the hearing, both parties testified. Although there were some discrepancies, the defendant, on various occasions, did promise the plaintiff $9,000.00 if and when he would be relieved of his monthly obligations for the house. Such relief will, of course, be accomplished by the pending sale now scheduled for December 6, 1991. The plaintiff also successfully explained why her reimbursment amount was $6,000.00 in the first stipulation and $9,000.00 in the second. The lower amount in the first stipulation took into account the parties' decision to split the realtor's commission if a sale were effectuated. For the pending sale, no realtor participated and no commission is due.
When the hearing ended, the court granted the defendant's motion to the extent that the plaintiff was ordered to sign the contract for the pending sale if she had not already done so. On the issue of the apportionment of the loss, briefs were requested. Apparently the defendant has had a change of mind. In his brief, the contention is made that apportionment of the loss is a matter in which the court has no subject matter jurisdiction. CT Page 10237
A challenge to a court's subject matter jurisdiction can be raised at any time and the lack thereof cannot be waived. LaBow v. LaBow, 171 Conn. 433, 440 (1976). Before proceeding further, the court must decide the defendant's jurisdictional claim because any other action would necessarily involve the exercise of jurisdiction. Statewide Grievance Committee v. Rozbicki,211 Conn. 232, 245 (1989). The burden of proving a lack of subject matter jurisdiction is on the party asserting it. See Demer v. Open Space Conservation Commission, 211 Conn. 416, 423-26
(1989).
It is the defendant's contention that, according to Practice Book Section 316 and Bunche v. Bunche, 180 Conn. 285 (1980), the court not only lacked jurisdiction to consider the "Motions For Modification" that he and the plaintiff filed in October and November, 1991 but also had no jurisdiction to approve the stipulations for modification as was done on August 27, 1990 and July 1, 1991.
Little need be said regarding Practice Book Section 326. That section prohibits the opening or setting aside of a judgment unless done pursuant to a motion filed within four months after the judgment was rendered except in such cases where the court has continuing jurisdiction. But Section 326 also allows parties to waive its limitations or otherwise to submit to the jurisdiction of the court. Daly v. Daly, 19 Conn. App. 65, 67 (1989). In this case, where all the post-dissolution proceedings were in response to the defendant's motions, the court concludes that Section 326 is inapplicable.
In Bunche v. Bunche, supra, the dissolution decree, incorporating the parties settlement agreement gave to the wife the option to purchase the husband's interest in their jointly held house on or before April 1, 1978 if, within thirty days of exercising the option she paid him 40% of its fair market value. Negotiations over the exercise of the option broke down upon disagreement as to the terms of delayed payments. When the wife sought to modify the decree so that a mortgage would be included, the trial court, citing General Statutes Section 46b-86, denied her motion and the Supreme Court affirmed. In general terms, Section 46b-86 grants continuous jurisdiction to trial courts for the purpose of modifying alimony or support orders but not for portions of dissolution judgments wherein property of one party is assigned to the other.
Although any apportionment of the loss occurring from the sale of the house will, under Bunche v. Bunche, supra, operate as "an assignment of part of the defendant's estate," our appellate courts, in the interests of finality, have resisted collateral CT Page 10238 attacks upon consensual or stipulated judgments. "The modern law of civil procedure suggests that even litigation about subject-matter jurisdiction should take into account the importance of the principle of the finality of judgments, particularly when the parties have had a full opportunity originally to contest the jurisdiction of the adjudicatory tribunal." Daley v. Hartford, 215 Conn. 14, 28 (1990). The traditional rule that subject-matter jurisdiction was always litigable has in recent years been modified by a perception, especially in dissolution cases, that even the question of subject matter jurisdiction should defer to the finality of a judgment especially where the lack of a jurisdiction is not entirely obvious. Morris v. Irwin, 4 Conn. App. 431, 433-34 (1985).
"Litigation about whether subject matter jurisdiction exists should take into account whether the litigation is a collateral or direct attack on the judgment, whether the parties consented to the jurisdiction originally, the age of the original judgment, whether the parties had an opportunity originally to contest jurisdiction, the prevention of a miscarriage of justice, whether the subject matter is so far beyond the jurisdiction of the court as to constitute an abuse of authority and the desirability of the finality of judgments. Daly v. Daly, supra at 69. A review of these items has convinced the court that the defendant's jurisdictional attack should not be sanctioned. Not only did the defendant help to create the jurisdictional problem by asking the dissolution court to adopt an agreement which, if economic circumstances dictated, could require a payment from him in the future, he compounded the problem by stipulating to modifications that would have obligated him to pay had they been able to be accomplished. Moreover in the defendant's last "Motion For Modification" he was successful in having the court order the plaintiff to sign the contract which established the loss that the original agreement and judgment envisioned as a possibility. "A party cannot belatedly contest subject-matter jurisdiction when he was fully aware of the consequences of the degree and had the opportunity to fully litigate the question of jurisdiction in the original action, but, by stipulation, agreed without reservation to the terms of the orders which he now challenges. Connecticut Pharmaceutical Assn., Inc. v. Milano, 191 Conn. 555, 558 (1982).
 II.
When, as here, the agreement of the parties is incorporated by reference into the dissolution decree, the judgment is to be regarded and construed as a contract. Barnard v. Barnard,214 Conn. 94, 109 (1990); Zivic v. Zivic, 26 Conn. App. 5, 7 (1991). In construing a contract, the cardinal rule is to ascertain the intent of the parties. A. Dubreuil Sons, Inc. v. Lisbon,215 Conn. 604, 610 (1990). Such an ascertainment requires CT Page 10239 consideration of not only the language used but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes they sought to accomplish.
Barnard v. Barnard, supra at 110.
The motives of the parties and the primary purpose of their formal agreement was to divide their property and debts in view of their forthcoming divorce. They succeeded except for the house which was to be sold. If the house were sold for a profit, the agreement states clearly that the plaintiff was to receive the gain. If the house were sold at a loss, the agreement is also clear. The parties reserved the question of the apportionment between themselves of any loss until the time of its occurrence.
Parties may, however, alter any term of an existing contract by entering into a subsequent agreement. Marzin v. United Bank Trust Co., 6 Conn. App. 513, 516 (1986). And a written contract can be modified by a parol agreement if such is the intention of the parties. New England Petroleum Corporation v. Groppo,214 Conn. 444, 450 (1990).[2] For a valid modification, the parties must mutually assent to the same thing. La-Rob Bus Corporation v. Fairfield, 170 Conn. 397, 402 (1976).
To determine whether the parties effectively modified the nebulous "loss" provision in their formal agreement, some further findings of fact are necessary. As heretofore stated, before the formal agreement was signed on January 16, 1990, the defendant told the plaintiff that he did not want her to lose the $18,000.00 that she had put into the house. In August, 1990, the defendant stated that if the house were sold at a loss, he would pay the plaintiff $9,000.00 as a one-half reimbursement of her investment. The first stipulated modification dated August 27, 1990, recited that the defendant was to pay $6,000.00 to the plaintiff on the consummation of a sale, but, as noted, the court credited the plaintiff's explanation of why $6,000.00 and not $9,000.00 would be due. The second stipulated modification, dated July 1, 1991, continued the defendant's promise to pay $9,000.00 should the plaintiff be successful in refinancing the house. The defendants considered that his promises to pay, as set forth in the first and second stipulated modifications were for a debt he owed to the plaintiff. After July 1, 1991, the parties discussed the defendant's proposal to pay $9,000.00 if the house were sold at a loss on several occasions. The latest discussion occurred when the present buyers made their initial offer of $115,000.00 which the plaintiff refused. The defendant, who was most anxious that the house be sold, never communicated any withdrawal of his proposal to the plaintiff between her rejection of the buyers' first offer and her acceptance of the buyers' second offer of $118,000.00. The plaintiff accepted the second offer with CT Page 10240 knowledge of the defendant's proposal and with the expectation that by her acceptance she would be entitled to receive the $9,000.00.
The court concludes that the defendant's proposal was in existence when the plaintiff accepted the buyers' second offer and that her acceptance provided the consideration that turned his proposal into a valid contractual obligation. In ascertaining the intent of the parties to a contract, the question is not what intentions may have existed in their respective minds but rather what intention was expressed in the language that they used. Barnard v. Barnard, supra at 110.
Accordingly, the defendant is indebted to the plaintiff for $9,000.00. If, as reported in the defendant's brief, there will be $2,400.00 remaining after the closing, the defendant shall pay his share to the plaintiff as part payment of the amount that he owes. III.
Before passing on the plaintiff's claim for an attorney's fee, the court will require a citation to the statute upon which the claim is predicated and an affidavit from the plaintiff's attorney detailing the time spent on this proceeding.
BARNETT, J.