[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON THE DEFENDANT'S MOTION TO OPEN AND MODIFY, POST JUDGMENT DATED JUNE 24, 1998
CT Page 13423
The Defendant Jean M. Glover by her motion has requested the Court to open the judgment entered on April 4, 1997 on the grounds that said judgment was entered on the basis of fraud or intentional material misrepresentation.
A review of the file reflects the following.
The family action was initiated by complaint dated October 29, 1996 and returnable November 19, 1996 by the Plaintiff David Glover.
The sheriff's return indicates abode service on November 2, 1996.
On February 6, 1997 the matter was claimed for the Family Relations List and a financial affidavit accompanied the claim slip.
On March 21, 1997 the Plaintiff filed another financial affidavit.
On March 21, 1997 Plaintiff's counsel filed a motion entitled Motion for Income Tax which requested that an order be entered requiring the parties to file a joint income tax return for 1996.
The certification on the motion represents that a copy of the motion was sent to the Defendant at 50 Plymouth Avenue West, Groton on March 18, 1997.
The motion was never acted on.
On March 21, 1997 another claim slip for the Family Relations Trial list was filed.
The matter was heard by the Court on April 4, 1997 at which time the Plaintiff David Glover appeared with his counsel.
No appearance had been filed by the Defendant prior to April 4, 1997.
See Defendant's Exhibit A, a transcript of the proceedings on April 4, 1997. CT Page 13424
The Court held a hearing on October 27, 1998 concerning the Defendant's motion to open, at which hearing both the Plaintiff and the Defendant appeared with their counsel.
A review of the transcript as concerns the issue before the Court reflects the following as testified to by the Plaintiff:
that the Defendant had at some point asked him to leave the home;
that the Defendant was residing with someone else in Groton from August 1996;
that the child Derek was in high school and resided with the Defendant;
that he had completed the parenting program;
that he was paying child support;
that the Defendant should have custody of Derek;
that there were bills and liabilities of approximately $18,000.00 ± that were marital bills;
that he was agreeing to pay those bills and the balance on his wife's car loan.
Plaintiff stated that the Defendant should not have any claim against his Navy pension.
In answer to questions put to the Plaintiff by the Court he responded follows:
that his education extended through two years beyond high school;
that he was retired from the U.S. Navy and receiving a pension;
that he was employed by the Department of Corrections;
that he was age 41; CT Page 13425
that he was in good health but collecting a VA disability;
that the Defendant was age 40 and was in good health to his knowledge;
that the Defendant completed high school;
that he and the Defendant were in accord on certain issues;
that the Defendant was aware of his coming to court on the day of the hearing;
that the son Christopher was residing with the Defendant and was well, that he went to school and is a member of the Army Reserve;
that the minor child Derek resided with the Defendant and was well and attended high school;
that the Plaintiff had no idea why the Defendant had not come to court.
From the testimony elicited from the parties on October 27, 1998 and the exhibits entered, the Court finds as to the issue before it the following.
That the minor child Derek suffers from Attention Deficit Disorder(ADD) and has been involved in altercations and fights in school.
That Derek treats with Dr. Burke at the Coast Guard Academy and Dr. Gilstein the school psychiatrist.
That Derek had recently been arrested.
That the Defendant treats with Dr. Henry F. Crabbe and has since April 20, 1993, that she has been diagnosed as Major Depressive Disorder and ADD.
That she is on a regimen of Prozac and Ritalin and Trazodone, that she has been admitted to Lawrence and Memorial Hospital and was an in-patient July 25, 1996 to August 1, 1996; that she has a chronic psychiatric illness and had a diminished mental capacity to respond to legal proceedings of divorce initiated in October 1996. CT Page 13426
See Defendant's Exhibits C and D.
That the Defendant was on medication at the time of the hearing on April 4, 1997.
That the Plaintiff was aware of Defendant seeing Dr. Crabbe.
That there was conflict between the Plaintiff and his son Christopher and that the conflict resulted in Christopher being placed in a DCF home.
That the Defendant suffered a nervous breakdown in July 1996.
After Defendant's release from the hospital on August 1, 1996 she learned of her father's terminal illness which caused his death on February 14, 1997.
Defendant never was aware of the abode service made by the sheriff
Defendant first learned of the dissolution in June or July 1997 when the Plaintiff gave her a copy of the judgment.
After receiving the copy of the decree of divorce, the Defendant conferred with an attorney but was unable to provide the requested retainer.
The Defendant sought assistance from the Women's Center after learning of the divorce.
The Defendant sought a transcript of the April 4, 1997 proceedings after learning of the dissolution.
Defendant is employed by Manpower, formerly worked at Millstone.
Defendant suffered from migraine headaches in March of 1997.
Defendant acknowledged receiving a copy of Attorney Chamberlain's motion regarding the joint tax return.
The Plaintiff was aware of Defendant treating with Dr. Crabbe. CT Page 13427
On visiting the hospital during July 1996, the Plaintiff observed the Defendant curled up in a fetal position and crying. See Defendant's Exhibit C.
The Plaintiff acknowledged he did not volunteer any information to the Court on April 4, 1997.
Plaintiff was considering filing bankruptcy at the time of the April 4, 1997 hearing and did so two months later, which compelled the Defendant to do the same to save herself as concerns the debts noted at the April 4, 1997 hearing.
Plaintiff never advised the Defendant of the April 4, 1997 hearing.
On November 17, 1998 the Defendant and her counsel appeared before the Court incident to the Defendant's motion to reopen hearing of October 27, 1998.
The Plaintiff and his counsel did not appear.
The Court was advised that the Plaintiff had no objection to the motion to reopen nor the proposed exhibit.
The Court granted the motion and received the following document, Defendant's Exhibit E.
The document is set forth verbatim herein.
31 DEC 97
Jeanne,
 Here's a copy of the divorce decree. I'm not required to give you a copy of this decree, but I'm doing so as I said I would. I'm also paying you $165.00 per week for child support as stated in divorce decree.
 I've been more than fair with you! I am requesting your military I.D. card and vehicle base sticker be given to me by 9 JAN 1997. I will have to notify the base.
David
This exhibit indicates that the Defendant's first knowledge CT Page 13428 of the decree of dissolution was December 31, 1997 rather than June or July 1997 as testified to in the hearing on October 27, 1998.
 The Law
C.G.S.
 Sec. 52-212. Reopening judgment upon default or nonsuit. (a) Any judgment rendered or decree passed upon a default or nonsuit in the superior court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.
 (b) The complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear.
 (c) The court shall order reasonable notice of the pendency of the complaint or written motion to be given to the adverse party, and may enjoin him against enforcing the judgment or decree until the decision upon the complaint or written motion.
Citicorp Mortgage Inc. vs. Tarro, 37 Conn. App. 56, 59 (1995) It is well recognized that where a motion to open a judgment is filed more than four months from the date of the judgment, the trial court lacks jurisdiction to open the judgment. Connecticut Pharmaceutical Assn., Inc. v. Milano, 191 Conn. 555, 558, 468 A.2d 1230 (1993); Celanese Fiber v. Pic Yarns. Inc., 184 Conn. 461, 465-66, 440 A.2d 159 (1981). In Celanese Fiber, our Supreme Court held that a trial court "lacked CT Page 13429 jurisdiction to open the judgment unless the otherwise provided by law exception applies." Celanese Fiber v. Pic Yarns. Inc., supra, 465. Unless the parties waive this time limitation, the trial court lacks jurisdiction to entertain a motion to open filed more than four months after a decision is rendered. Van Mecklenburg v. Pan American World Airways Inc., 196 Conn. 517, 518, 494 A.2d 549 (1985); Gallagher v. Gallagher, 29 Conn. App. 482, 483, 616 A.2d 281 (1992). Moreover, it has long been held that "[i]t is necessary to the validity of the judgment that the court should have had jurisdiction of the precise question which its judgment assumes to decide, or of the particular remedy or relief which it assumes to grant.'" Hanson v. Commission of Transportation, 176 Conn. 391, 401, 408 A.2d 8 (1979).
 There are few exceptions to the general rule. The court does have jurisdiction to open a stipulated judgment, on a motion, even after the four month period has elapsed if the movant can show that the judgment was obtained by fraud, duress, accident, or mistake. Solomon v. Keiser, 22 Conn. App. 424, 577 A.2d 1103 (1990). Accordingly, Practice Book § 326 does not prevent the later reopening of a judgment obtained by fraud, by mutual mistake or by actual absence of consent. Kenworthy v. Kenworthy, 180 Conn. 129, 131, 429 A.2d 837 (1980)
Kenworthy v. Kenworthy, 180 Conn. 129, 131 (1980). It is a well-established general rule that even a judgment, rendered by the court upon the consent of the parties, which is in the nature of a contract to which the court has given its approval, can subsequently be opened without the assent of the parties if it is shown that the stipulation, and hence the judgment, was obtained by fraud, in the actual absence of consent, or by mutual mistake. See Sparaco v. Tenney, 175 Conn. 436, 437-38, 399 A.2d 1261; Bryan v. Reynolds, 143 Conn. 456, 460-61, 123 A.2d 192; see also Arkansas State Highway Commission v. Clemmons, 244 Ark. 1124, 428 S.W.2d 280, Ratermann v. Ratermann, 485 S.W.2d 80
(Mo.); In re Johnson, 277 N.C. 688, 178 S.E.2d 470; Westfall v. Wilson, 255 Or. 428, 467, P.2d 966; 3 Freeman, Judgments (5th Ed.) § 1352; 46 Am.Jur.2d, CT Page 13430 Judgments § 688; annot., 139 A.L.R. 421. The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any time.
Billington v. Billington, 220 Conn. 212, 217 (1991) We granted certification in order to determine; (1) whether our law should continue to require a marital litigant to exercise diligence in discovering her marital partner's fraud as a condition of opening a judgment concerning the financial aspects of the dissolution of their marriage on the basis of that fraud; and (2) in this context, whether there should be a difference between fraud on the court and fraud on the adverse party. For the reasons that follow, we conclude that a requirement of diligence in the discovery of marital fraud should be abandoned, but that the concept of a fraud on the court is properly confined to situations where both of the parties intentionally conceal material information from the court.
 I We turn now to the first certified issue. "`Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed.'" Alexander v. Church, 53 Conn. 561, 562, 4 A. 103 (1886), quoting T. Cooley, Torts p. 474. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Maturo v. Gerard, 196 Conn. 584, 587, 494 A.2d 1199 (1985); Miller v. Appleby, 183 Conn. 51, 54-55, 438 A.2d 811 (1981).
 "The power of the court to vacate a judgment for fraud is regarded as inherent and independent of statutory provisions authorizing the opening of judgments; hence judgments obtained by fraud may be attacked at any CT Page 13431 time." Id.
 In Varley v. Varley, supra, 4, we imposed four limitations on the granting of relief from a marital judgment secured by fraud: "(1) There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. (2) There must have been diligence in the original action, that is, diligence in trying to discover and expose the fraud. (3) There must be clear proof of the perjury or fraud. (4) There must be a substantial likelihood that the result of the new trial will be different." We reiterated those four limitations in Jucker v. Jucker, supra, 677. The Appellate Court has applied these limitations as well. See Gelinas v. Gelinas, 100 Conn. App. 167, 174, 522 A.2d 295, cert. denied, 204 Conn. 802, 525 A.2d 965
(1987); Grayson v. Grayson, 4 Conn. App. 275, 286, 494 A.2d 576 (1985); Jackson v. Jackson, 2 Conn. App. 179, 189, 478 A.2d 1026 (1984); but see Greger v. Greger, supra, 599-600 (express finding of fraud on court required that judgment be opened without regard to four limitations). In this case, we are concerned only with the second of these limitations, namely, that the party seeking to open the judgment exercised diligence in the original action in order to discover and expose the fraud. We are persuaded that the time has come to abandon that limitation.
 Discussion
On the basis of the hearing on October 27, 1998 it appears to the Court that while the Plaintiff was not required to be a volunteer in apprizing the Court of the true state of affairs it was incumbent on the Plaintiff to truthfully make known to the Court the actual condition of the Defendant.
In its questions to the Plaintiff on April 4, 1997, the Court was endeavoring to secure an honest picture of the circumstances of both of the parties.
The Court believes that the Plaintiff was aware of the physical and mental state of the Defendant and in honesty and candor should have shared that knowledge with the Court.
The exhibits submitted at the October 27, 1998 hearing, plus CT Page 13432 the Court's visual observations of the Defendant during that hearing, and her demeanor, bring the Court to the conclusion that her condition at the time of the April 4, 1997 hearing require in the interests of justice that the judgment be opened.
The Plaintiff had to be aware of her condition to the extent that in all good conscience he should have been more forthright and straightforward in his responses to the Court.
The Court is satisfied that due to her condition the Defendant did not understand that a dissolution was pending or acted on until December 31, 1997 when the Plaintiff gave her a copy of the decree. See Defendant's Exhibit E.
Thereafter due to her financial condition the Defendant was not able to provide a $2,500.00 retainer required by counsel to whom she had resorted and proceeded instead to secure a transcript and eventually secure her present counsel.
Mindful of the length of the marriage and the Defendant's financial circumstances, there is a substantial likelihood of a different end result in a new trial especially as concerns her interest in the Plaintiff's military pension.
The motion to open the judgment is granted.
Austin, JTR